Michael D. Flynn, Jr., Esq.
**MAHER · YANZA · FLYNN · TIMBLIN, LLP**
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorneys for HAYAO SUEHIRO

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF GUAM

| | |
|---|---|
| ROBERT J. DEL ROSARIO,<br><br>      Plaintiff,<br><br>vs.<br><br>JAPAN AIRLINES INTERNATIONAL CO., LTD.,<br><br>      Defendant. | CIVIL CASE NO. CIV04-00028<br><br>AFFIDAVIT OF MICHAEL D. FLYNN, JR. IN SUPPORT OF HAYAO SUEHIRO'S SUPERIOR AND PERFECTED INTEREST IN SETTLEMENT PROCEEDS; CERTIFICATE OF SERVICE |

Hagåtña, Guam    ) ss:

    I, **MICHAEL D. FLYNN, JR.**, having been first duly sworn, hereby depose and declare, as follows:

    1.    I am an attorney with MAHER • YANZA • FLYNN • TIMBLIN, LLP, a limited liability partnership, counsel for Hayao Suehiro ("Suehiro").

    2.    On February 18, 2003, Robert J. Del Rosario ("Del Rosario") made, executed and delivered to Suehiro, as payee, a promissory note in writing, whereby Del Rosario promised to pay to Suehiro or his order, on February 18, 2005, the sum of One Hundred Thousand Dollars ($100,000.00), with interest thereon at the rate of one percent (1%) per

1

ORIGINAL

1      month, compounded monthly, from February 18, 2003 until payment of
2      principal and interest in full (the "Promissory Note"). A true and correct
3      copy of the Promissory Note is attached hereto, as Exhibit "1", and
4      incorporated herein.

5   3.   To secure the indebtedness evidenced by the Promissory Note, Del
6      Rosario, on February 18, 2003, executed and delivered to Suehiro, a
7      written security agreement (the "Security Agreement") granting and
8      conveying to Suehiro a security interest in and to the proceeds of
9      settlement, compromise or judgment (hereinafter the "Proceeds") from
10     Del Rosario's claims and damages for bodily injury against Japan
11     Airlines Co., Ltd. (hereinafter, "JAL") and any other person who
12     contributed to the cause of  Robert Del Rosario's bodily injury to his
13     lower limbs on a JAL aircraft. A true and correct copy of the Security
14     Agreement is attached hereto, as Exhibit "2", and incorporated herein.

15  4.   Counsel for Del Rosario and counsel for JAL were given notice of the
16     Security Agreement and Suehiro's interest in settlement proceeds on
17     February 19, 2003. A true and correct copy of the notice, informing
18     counsel of Suehiro's secured interest and the Security Agreement, is
19     attached hereto, as Exhibit "3", and incorporated herein.

20  5.   Suehiro perfected his security interest, on April 13, 2007, by filing a
21     financing statement (to which a true and correct copy of the Security
22     Agreement was attached) with the Commissioner of Banking &
23     Insurance, Department of Revenue and Taxation, Government of Guam
24     (the "Financing Statement"). A true and correct copy of the Financing
25     Statement is attached hereto, as Exhibit "4", and incorporated herein.

2

1     6.    In accordance with the Guam Uniform Commercial Code, Artemio
2           Illagan, Director, Department of Revenue and Taxation, Government of
3           Guam certified, on July 24, 2007, that Suehiro is the only secured party
4           with a perfected interest in the Proceeds against all other parties and
5           assignees. A true and correct copy of Director Illagan's certification is
6           attached hereto, as Exhibit "5", and incorporated herein.

7     7.    On September 6, 2007, Frances M. Tydingco-Gatewood, Chief Judge,
8           United States District Court, District of Guam, entered Judgment by
9           Default against Del Rosario, in favor of Suehiro, granting Suehiro a
10          security interest in the settlement proceeds and ordering the Clerk of
11          Court to disburse to Suehiro any and all settlement funds, subject to
12          determination of an award of William L. Gavras' attorney's fees and
13          costs. A true and correct copy of the Court's Judgment by Default and
14          Order is attached hereto, as Exhibit "6", and incorporated herein.

15    8.    Suehiro concedes that attorney's fees and costs due to William L.
16          Gavras, as represented in the November 28, 2006 Stipulation Regarding
17          Attorney Fees filed with this Court, have priority over Suehiro's secured
18          interest in the settlement proceeds; however, aside from Mr. Gavras, no
19          other person or party has a superior, secured or perfected interest over
20          Suehiro in the settlement proceeds.

21    9.    Based upon the above, Suehiro respectfully requests that this Honorable
22          Court issue an Order: (a) ordering JAL to immediately deposit the
23          $175,000 in settlement proceeds with the Clerk of Court, District Court of
24          Guam; (b) ordering that upon the Clerk of Court's receipt of the $175,000
25          from JAL, JAL shall have entirely met its settlement obligation to Del

3

1 Rosario and JAL shall have no further obligation of any kind to Del

2 Rosario; (c) ordering that fees and costs due to William L. Gavras, as

3 represented in the filed November 28, 2006 Stipulation with this Court,

4 be immediately disbursed to Mr. Gavras from the $175,000 in settlement

5 proceeds deposited with the Clerk of Court; and, (d) ordering that the

6 remainder of the $175,000 settlement proceeds deposited with the Clerk

7 of Court be immediately disbursed to Suehiro--in conformance with the

8 District Court's September 6, 2007 Order and Judgment of Default—by

9 way of payment to counsel for Suehiro's client trust account, i.e., the

10 MAHER • YANZA • FLYNN • TIMBLIN, LLP Client Trust Account.

11 Further affiant sayeth naught.

13 _MICHAEL D. FLYNN, JR._

14 **MICHAEL D. FLYNN, JR.**

16 SUBSCRIBED AND SWORN to before this 24th day of March, 2008, by
MICHAEL D. FLYNN, JR.



18 _Valerie A.M. Esplana_

19 Notary Public

VALERIE A.M. ESPLANA
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: December 31, 2011
P.O. Box 5364 Hagåtña, Guam 96932

## CERTIFICATE OF SERVICE

I, Louie J. Yanza, hereby certify that on or before March 24, 2008, I caused to be sent by personal service or by facsimile, a copy of the annexed **Affidavit of Michael D. Flynn, Jr. in Support of Hayao Suehiro's Superior and Perfected Interest in Settlement Proceeds; Certificate of Service**, to the following parties at their place of business:

<div align="center">

**David P. Ledger, Esq.**
CARLSMITH BALL, LLP
134 W. Soledad Avenue
Bank of Hawaii Bldg., Ste. 401
Hagatña, Guam 96910
Counsel for **JAPAN AIRLINES INTERNATIONAL CO., LTD.**

**Howard G. Trapp, Esq.**
HOWARD TRAPP INCORPORATED
200 Saylor Bldg.
139 Chalan Santo Papa
Hagatña, Guam 96910
Counsel for **ROBERT DEL ROSARIO**

**William L. Gavras, Esq.**
LAW OFFICES OF WILLIAM L. GAVRAS
101 Salisbury Street
Dededo, Guam 96929

</div>

Dated this 24th day of March, 2008.

<div align="right">

**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
Attorneys for **HAYAO SUEHIRO**

</div>

By: _____
**MICHAEL D. FLYNN, JR., ESQ.**

# PROMISSORY NOTE

<u>$100,000.00</u>                                                                          Hagåtña, Guam

February 18, 2003

FOR VALUE RECEIVED, Robert J. Del Rosario, whose Social Security Number is ~~586 -60-8792~~ and whose mailing address is 110 Calamendo Loop, Liguan Terrace, Dededo, Guam 96929 (the "Maker"), promises to pay to the order of Hayao Suehiro, whose address is Sankyo Seisakusho Co., Ltd., Tsuzuki-ku, Ikebe-cho 3290, Yokohama City, Japan 224-0053, the sum of One Hundred Thousand dollars ($100,000.00)(the "principal amount") together with interest thereon as provided herein.

The unpaid principal balance of this Note shall bear interest at the rate of one (1%) percent per month, compounded monthly. Monthly payments of interest only in the amount of One Thousand Dollars ($1,000.00) shall be due and payable, in advance, on each one-month anniversary of the date first set forth above. The first such payment shall be due and payable upon the twelfth (12th) month anniversary of the date first set forth above and payments shall continue thereafter for the next eleven (11) months. On the twenty-fourth (24th) month anniversary of the date first set forth above, the entire principal balance of this Note, together with all accrued interest and any other charges properly due hereunder, shall be due and payable in full.

The amount of any delinquent payment of principal and/or interest (i.e., not paid within ten (10) days of notice) shall bear interest at the rate of two (2%) percent per month, compounded monthly, from the date due to the date payment is made, and in the event that the holders exercise their right to accelerate this Note as provided herein, upon default, then the amount so accelerated shall bear interest at the rate of two (2%) percent per month, compounded monthly, from the date of notice of such acceleration to the date payment is made. This Note shall be prepayable in whole or in part at any time or times.

**Exhibit**

The Maker also agrees to pay all costs and expenses incurred by the holders hereof, including all reasonable attorneys' fees, in connection with the collection of this Note and the indebtedness evidenced hereby, or the enforcement of the holders' rights hereunder.

At the option of the holders, the entire principal balance of this Note, together with accrued interest thereon, shall become immediately due and payable without further notice or demand, and notwithstanding any prior waiver of any breach or default or other indulgence, upon the occurrence at any time of any one or more of the following events: (i) default in making any payment of principal or interest, but only if such default continues for ten (10) days after written notice thereof is sent by post paid certified mail to the Maker; (ii) execution of a trust mortgage, insolvency, appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the filing of a petition in bankruptcy by, or the filing of a petition in bankruptcy or the commencement of any proceedings under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, composition or extension by or against the Maker; or upon the dissolution or termination of the Maker.

The Maker hereby: (a) waives presentment, demand, protest, suretyship defenses and defenses in the nature thereof; (b) waives any defenses based upon and specifically assents to any and all extensions and postponements of the time for payment, changes in terms and conditions and all other indulgences and forebearances which may be granted by the holders to any party now or hereafter liable hereunder; and (c) agrees to be bound by all of the terms contained in this Note.

No delay or omission on the part of the holders in exercising any right hereunder shall operate as a waiver of such right, or of any other right of such holders, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to, or waiver of, the same or of any other right on any future occasion.

Payment of this Note and the performance of its provisions are secured by a security

agreement executed concurrently herewith by the Maker for the security of the holders.

Executed as a sealed instrument effective the day first set forth above.

ROBERT J. DEL ROSARIO

GUAM                              )
                                  ) ss:
CITY OF HAGÂTÑA                   )

On this __18th__ day of February, 2003, before me a Notary Public in and for Guam, personally appeared ROBERT J. DEL ROSARIO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public

NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004
P.O. Box 20248, GMF, Guam 96921

) SEAL (

# SECURITY AGREEMENT

This Security Agreement is made this 18th of February, 2003, by and between ROBERT J. DEL ROSARIO, whose mailing address is 110 Calamendo Loop, Liguan Terrace, Dededo, Guam 96929 (hereinafter referred to as the "Debtor"); and Hayao Suehiro, whose address is Sankyo Seisakusho Co., Ltd., Tsuzuki-ku, Ikebe-cho 3290, Yokohama City, Japan 224-0053 (hereinafter as to the "Secured Party").

WHEREAS, Secured Party has advanced Debtor the total sum principal amount of One Hundred Thousand Dollars ($100,000.00) and Debtor has agreed to repay Secured Party the principal amount of One Hundred Thousand Dollars, plus interest, in accordance with the terms of a certain Promissory Note, of even date, executed concurrently herewith (hereinafter, the "Promissory Note");

WHEREAS, Debtor recently suffered injuries to his lower limbs on a Japan Airlines Co., Ltd. aircraft, as a result of the actions of various third party tortfeasors (hereinafter, the "Third Party Claim");

WHEREAS, Debtor possesses an interest in the proceeds of settlement, compromise or judgment from the Third Party Claim against Japan Airlines Co., Ltd., Japan Airlines Co. (Guam), Ltd., their respective insurance companies, their agents, and any other person who contributed to the cause of the Incident (hereinafter, the "Third Party Tortfeasors");

WHEREAS, Debtor intends and agrees to pursue his Third Party Claim against the Third Party Tortfeasors by filing a claim for the injuries he has suffered and, should the claim not be settled or compromised, by prosecuting his claim in a civil action against the Third Party Tortfeasors within two (2) years of the date upon which Debtor was injured;

WHEREAS, Debtor intends and agrees to be solely responsible for the payment of all attorney's fees, which he has, or will, incur in the pursuit, and prosecution, of his Third Party Claim; and,

WHEREAS, Debtor intends and agrees to assign to Secured Party the proceeds of any settlement, compromise or judgment that he receives from the Third Party Claim in an amount equal to the amount Debtor owes Secured Party under the Promissory Note.

In consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.   _Incorporation of Premises_.  All Premises set forth above are hereby fully incorporated into this Agreement and shall have the same force and effect as if set forth in full herein.

Exhibit

2.      Grant of Security Interest.  For valuable consideration, and to secure the payment and performance of the Secured Obligations as defined in Paragraph 3, Debtor hereby assigns to Secured Party, and grants to Secured Party, a security interest in the proceeds of any settlement, compromise or judgment from the Third Party Claim, resulting from actions of the Third Party Tortfeasors, as referenced in the Premises above (all of which shall be collectively referred to herein as "Collateral").

3.      Obligations Secured.  This Agreement and the security interest created hereby are given for the purpose of securing the following (collectively, the "Secured Obligations"): All obligations now existing or hereafter arising, direct or indirect, absolute or contingent, due or to become due, of Debtor to Secured Party arising out of or relating to the payment of the indebtedness evidenced by that certain Promissory Note even date herewith in the principal amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) (the "Promissory Note") executed by Debtor in favor of Secured Party.

4.      Debtor's Representations.  Debtor represents, covenants, warrants and agrees that: (a) Debtor will execute all documents and take such other action as Secured Party deems necessary to create and perfect a security interest in the Collateral; (b) Debtor will, at its sole cost and expense, defend any claims that may be made against the Collateral; (c) Debtor will not, without Secured Party's prior written consent, transfer, sell, encumber, conceal or otherwise dispose of the Collateral or any interest therein; (d) Debtor has full power and authority to own the Collateral and enter into and perform this Agreement; (e) the execution and delivery of this Agreement by Debtor have been duly authorized by all necessary actions of the Debtor; (i) Debtor has, or will have, good and marketable title to all of the Collateral, free and clear of all liens, claims, options, charges, security interests and encumbrances taking priority over the security interest granted hereunder to the Secured Party; (f) As to any of the Collateral hereafter acquired by Debtor, Secured Party will have a valid, perfected security interest in such Collateral upon Debtor acquiring use or possession of same; (g) Debtor shall from time to time execute and deliver to Secured Party such documents as Secured Party may reasonably require to further assure to Secured Party its rights under this Agreement, including as may be necessary or appropriate to perfect, preserve and protect the security interests granted hereunder.

To the extent permitted by applicable law, Debtor hereby authorizes Secured Party to execute and file in the name of Debtor, with or without Debtor's signature, UCC financing statements, continuation statements or other filings not inconsistent with the financing statements executed by Debtor hereunder, which Secured Party in its reasonable discretion may deem necessary or appropriate to perfect, preserve and protect the security interests granted hereunder. So long as Debtor remains obligated under this Agreement or under any Secured Obligations,

Debtor shall permit Secured Party, or its assignee, at Secured Party's expense, to inspect all documents concerning Debtor's claim, legal or otherwise, and to visit any place, including, but not limited to law offices, where the documents concerning the Third Party Claim or Collateral are located, to examine Debtor's books of account and records and legal documents and to discuss Debtor's affairs, finances and accounts and legal status of the Third Party Claim with, and be advised of the same by Debtor's respective officers, agents and attorneys, all at such reasonable times as may be requested by Secured Party. Debtor shall not change its attorneys, with respect to the Third Party Claim, or the location of its legal documents, or change its name or identity in any manner, unless Debtor shall have given at least thirty (30) days prior written notice thereof to Secured Party and shall have taken all action necessary or required by Secured Party to protect and preserve the perfection and validity of the security interest granted hereunder. Debtor agrees and covenants to keep substantially complete and accurate books and records concerning the Collateral, including proceeds thereof, and to permit the Secured Party and their designees upon reasonable notice and during reasonable business hours to enter Debtor's premises, or the premises of Debtor's attorneys, to inspect Debtor's books, records and legal documents and to audit and make copies or extracts from such books, records and documents. Such entry and inspection shall be conducted so as to minimize any interruption to Debtor and Debtor's attorneys' law practice and, upon the request of Debtor, shall be subject to an appropriate non-disclosure agreement. Debtor agrees and covenants to promptly notify the Secured Party of any legal process levied against the Collateral.

5.    Default.  There shall be a "default" hereunder upon the occurrence of any of the following "Events of Default":

(a)    Debtor shall fail to make any payment of principal, interest or charges when due pursuant to the Promissory Note or this Agreement and such failure shall not be cured within ten (10) days after receipt of notice from Secured Party; or

(b)    Debtor shall fail to perform, observe or comply with any other covenant, condition or agreement required to be observed or performed by the Debtor pursuant to the Promissory Note or this Agreement and such failure shall not be cured within thirty (30) days after receipt of written notice from Secured Party, or in the event such failure is not reasonably curable within such thirty (30) day period, Debtor shall not be in default so long as it commences curative efforts within such thirty day period and thereafter diligently continues to try to cure such failure; or

(c)    Debtor shall become insolvent or shall admit in writing its inability to meet its debts as they become due, or shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of creditors, or consent to the appointment of a receiver or trustee for all or a substantial part of its properties, or file a petition, answer or other instrument seeking or

acquiescing to the arrangement of Debtor's debts, or other relief under the federal bankruptcy laws or any other applicable law for the relief of debtors of the United States of America or any state or territory thereof; or

(d)      A decree or order of a court having jurisdiction in the premises shall be entered (i) adjudging Debtor to be bankrupt or insolvent, or (ii) appointing a receiver or trustee or assignee in bankruptcy or insolvency of Debtor or Debtor's assets or, (iii) directing the winding up or liquidation of Debtor's affairs; or

(e) Any representation, warranty or covenant made by Debtor in connection with the Promissory Note or this Agreement shall be untrue at any time in any material respect.

(f) The institution of involuntary bankruptcy, insolvency or similar proceedings against the Debtor which are not dismissed within sixty (60) days; or

6.      Secured Party's Remedies Upon Default.    Upon the occurrence of a default hereunder, all obligations secured hereby shall, at Secured Party's option, immediately become due and payable without notice or demand, and Secured Party shall have in any jurisdiction where enforcement hereof is sought, in addition to all other rights and remedies which the Secured Party may have under law or under the terms of the Promissory Note, (i) all rights and remedies of a secured party under the Uniform Commercial Code as enacted in the territory of Guam, and/or (ii) the following rights and remedies, all of which may be exercised with or without further notice to Debtor:  (a) to settle, compromise or release on terms acceptable to Secured Party, in whole or in part, any amounts owing on the Collateral; (b) to enforce payment and prosecute any action or proceeding with respect to any and all of the Collateral; (c) to extend the time of payment, make allowances and adjustments and issue credits in Secured Party's name or in the name of Debtor; (d) to foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Collateral by any available judicial procedure or without judicial process; (e) to enter any premises where any Collateral may be located for the purpose of taking possession of or removing the same; (f) to remove from any premises where the same may be located the Collateral and any and all documents, instruments, files and records, and any receptacles and cabinets containing the same, relating to the Collateral; (g) to receive, open and dispose of all mail addressed to Debtor and notify postal authorities to change the address for delivery thereof to such address as Secured Party may designate.  Debtor agrees to pay all costs and expenses incurred by Secured party in the enforcement of this Agreement, including without limitation reasonable attorneys' fees, whether or not suit is filed thereon.  Secured Party may exercise any of its rights and remedies without demand, advertisement or notice other than as may be required by law or this Agreement.   To the fullest extent permitted by law, Debtor waives notice of acceptance of this Agreement, demand, notice, protest, or other action taken in reliance hereon and all other demands

and notices of any description, except as provided herein.

7.    Notices.  Any notice required or permitted by law or this Agreement shall be in writing, and shall be deemed to have been duly given if personally delivered, upon delivery, or if sent by telex, electronic reproduction, facsimile or similar means, upon sending, or, if mailed, forty-eight (48) hours after being posted by United States certified or registered mail, first-class postage prepaid, to the parties or their assignees at the addresses set forth above (or at such other address as shall be given in writing by either party to the other).

8.    Miscellaneous.  This Agreement expresses the entire understanding of the parties and may not be altered or amended except with the written consent of each of the parties.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  All obligations of Debtor shall be joint and several.  All of Secured Party's rights and remedies hereunder are cumulative and not exclusive, and are in addition to all rights and remedies provided by law or under any other agreement between Debtor and Secured Party, or otherwise.  Where the context permits, the plural term shall include the singular, and vice versa.  This Security Agreement shall be governed by the laws of the Territory of Guam.  The paragraph headings are inserted for convenience only.

9.    No Obligations Undertaken.  Nothing contained in this Agreement shall relieve Debtor of, or impose on Secured Party, any obligation or liability for, under or in respect of the Collateral, and Debtor shall indemnify and hold Secured Party harmless from and against all such obligations and liabilities and any claims relating thereto.

10.    Further Assurances.  Debtor agrees that at any time and from time to time upon the written request of Secured Party, Debtor will execute and deliver such further documents, including but not limited to financing statements or other filings appropriate for perfecting Secured Party's rights hereunder, in form reasonably satisfactory to counsel for Secured Party and Debtor, and will take or cause to be taken such further acts as Secured Party may reasonably request in order to effect the purposes of this Agreement and perfect or continue the perfection of the security interest in the Collateral granted to Secured Party hereunder.

11.    Waiver, Amendment or Modification.  No waiver, amendment or modification of any provision hereof or of any right or remedy hereunder shall be effective unless in writing and signed by the party against whom such waiver, amendment or modification is sought to be enforced.  No failure by Secured Party to exercise, and no delay by Secured Party in exercising, any right, power or remedy granted hereunder shall operate as a waiver of any such right, power or remedy.  A waiver of any right or remedy by Secured Party on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

12. <u>Severability</u>.  Every provision of this Agreement is intended to be severable.  If any term or provision is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions, which terms and provisions shall remain binding and enforceable.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**DEBTOR:**



_____
**ROBERT J. DEL ROSARIO**

**SECURED PARTY:**

*SUEHIRO HAYAO*
_____
**HAYAO SUEHIRO**

GUAM                        )

                                ) ss:

CITY OF HAGÅTÑA         )

        On this 18th day of February, 2003, before me a Notary Public in and for Guam, personally appeared ROBERT J. DEL ROSARIO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

                                      Notary Public

                                    NORMALOU G. MANIBUSAN
                                    NOTARY PUBLIC
                                In and for Guam, U.S.A.
                            My Commission Expires: Aug. 8, 2004,
                                P.O. Box 20248, GMF, Guam 96921

) SEAL (

GUAM                        )

                                  ) ss:

CITY OF HAGÅTÑA         )

        On this 18th day of February, 2003, before me a Notary Public in and for Guam, personally appeared HAYAO SUEHIRO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

                                        Notary Public

                                    NORMALOU G. MANIBUSAN
                                      NOTARY PUBLIC
                                In and for Guam, U.S.A.
                            My Commission Expires: Aug. 8, 2004
                              P.O. Box 20248, GMF, Guam 96921

) SEAL (

FRANCIS M. MCKEOWN
D. PAUL VERNIER, JR.**
JOHN G. PRICE*
JOHN B. MAHER**
COLIN C. MUNRO*
LOUIE J. YANZA**
MICHAEL D. FLYNN, JR.
THOMAS S. CLIFTON*
TERENCE E. TIMBLIN**
JEANINE M. LARREA*

*ADMITTED IN CA
**ADMITTED IN GUAM



**MCKEOWN • VERNIER • PRICE • MAHER**
ATTORNEYS AT LAW
A Joint Venture of McKeown Price, LLP
and Vernier & Maher, LLP

115 HESLER PLACE
GROUND FLOOR
GOV. JOSEPH FLORES BLDG.
HAGÅTÑA, GUAM 96910-5004
TELEPHONE 671-477-7059
FACSIMILE 671-472-5487
www.mckeownlaw.com
E-MAIL vernier@ite.net

February 19, 2003

**<u>VIA FACSIMILE 477 5206</u>**

R. Todd Thompson
MAIR MAIR SPADE & THOMPSON
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910

**<u>VIA FACSIMILE 472 2342</u>**

William L. Gavras
GORMAN & GAVRAS
118A Chalan Santo Papa
Hagåtña, Guam 96910

**Re:    Robert J. Del Rosario**
        **MVPM File No.: S-0028**

Gentlemen:

It is my understanding that Mr. Robert J. Del Rosario has made a claim against Japan Airlines Co., Ltd. ("JAL"), and its insurers, in connection with alleged injuries to his lower limbs on a JAL aircraft, which injuries allegedly occurred on July 20, 2002. I understand that Mr. Thompson represents the insured, JAL, and its insurer, in connection with Mr. Del Rosario's claim. I understand that Mr. Gavras represents Mr. Del Rosario.

Please know that Mr. Del Rosario has assigned the proceeds of any settlement, compromise or judgment that he receives, as a result of the claim against JAL, to my client, Mr. Hayao Suehiro. Please find the attached, executed Security Agreement, securing Mr. Suehiro's lien on the proceeds of the above-referenced claim. My client, Mr. Suehiro, intends to pursue his rights under the Security Agreement and related documents. As such, on my client's behalf, I respectfully request your cooperation.

Please contact me before settlement, compromise or judgment is effected with respect to Mr. Del Rosario's claim.

Exhibit
**3**

Thank you for your help and cooperation. Please feel free to contact me should you have any questions or concerns.

Very truly yours,

**McKEOWN • VERNIER • PRICE • MAHER**

Michael D. Flynn, Jr.

Enclosures

cc:     Mr. Hayao Suehiro

C:\Documents\Civil\SUEHIRO Hayao\Correspondence\Thompson-Gavras 021903.doc

# SECURITY AGREEMENT

This Security Agreement is made this 18th of February, 2003, by and between ROBERT J. DEL ROSARIO, whose mailing address is 110 Calamendo Loop, Liguan Terrace, Dededo, Guam 96929 (hereinafter referred to as the "Debtor"); and Hayao Suehiro, whose address is Sankyo Seisakusho Co., Ltd., Tsuzuki-ku, Ikebe-cho 3290, Yokohama City, Japan 224-0053 (hereinafter as to the "Secured Party").

WHEREAS, Secured Party has advanced Debtor the total sum principal amount of One Hundred Thousand Dollars ($100,000.00) and Debtor has agreed to repay Secured Party the principal amount of One Hundred Thousand Dollars, plus interest, in accordance with the terms of a certain Promissory Note, of even date, executed concurrently herewith (hereinafter, the "Promissory Note");

WHEREAS, Debtor recently suffered injuries to his lower limbs on a Japan Airlines Co., Ltd. aircraft, as a result of the actions of various third party tortfeasors (hereinafter, the "Third Party Claim");

WHEREAS, Debtor possesses an interest in the proceeds of settlement, compromise or judgment from the Third Party Claim against Japan Airlines Co., Ltd., Japan Airlines Co. (Guam), Ltd., their respective insurance companies, their agents, and any other person who contributed to the cause of the Incident (hereinafter, the "Third Party Tortfeasors");

WHEREAS, Debtor intends and agrees to pursue his Third Party Claim against the Third Party Tortfeasors by filing a claim for the injuries he has suffered and, should the claim not be settled or compromised, by prosecuting his claim in a civil action against the Third Party Tortfeasors within two (2) years of the date upon which Debtor was injured;

WHEREAS, Debtor intends and agrees to be solely responsible for the payment of all attorney's fees, which he has, or will, incur in the pursuit, and prosecution, of his Third Party Claim; and,

WHEREAS, Debtor intends and agrees to assign to Secured Party the proceeds of any settlement, compromise or judgment that he receives from the Third Party Claim in an amount equal to the amount Debtor owes Secured Party under the Promissory Note.

In consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.     Incorporation of Premises.  All Premises set forth above are hereby fully incorporated into this Agreement and shall have the same force and effect as if set forth in full herein.

ORIGINAL

2.    Grant of Security Interest.  For valuable consideration, and to secure the payment and performance of the Secured Obligations as defined in Paragraph 3, Debtor hereby assigns to Secured Party, and grants to Secured Party, a security interest in the proceeds of any settlement, compromise or judgment from the Third Party Claim, resulting from actions of the Third Party Tortfeasors, as referenced in the Premises above (all of which shall be collectively referred to herein as "Collateral").

3.    Obligations Secured.  This Agreement and the security interest created hereby are given for the purpose of securing the following (collectively, the "Secured Obligations"): All obligations now existing or hereafter arising, direct or indirect, absolute or contingent, due or to become due, of Debtor to Secured Party arising out of or relating to the payment of the indebtedness evidenced by that certain Promissory Note of even date herewith in the principal amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) (the "Promissory Note") executed by Debtor in favor of Secured Party.

4.    Debtor's Representations.  Debtor represents, covenants, warrants and agrees that: (a) Debtor will execute all documents and take such other action as Secured Party deems necessary to create and perfect a security interest in the Collateral; (b) Debtor will, at its sole cost and expense, defend any claims that may be made against the Collateral; (c) Debtor will not, without Secured Party's prior written consent, transfer, sell, encumber, conceal or otherwise dispose of the Collateral or any interest therein; (d) Debtor has full power and authority to own the Collateral and enter into and perform this Agreement; (e) the execution and delivery of this Agreement by Debtor have been duly authorized by all necessary actions of the Debtor; (i) Debtor has, or will have, good and marketable title to all of the Collateral, free and clear of all liens, claims, options, charges, security interests and encumbrances taking priority over the security interest granted hereunder to the Secured Party; (f) As to any of the Collateral hereafter acquired by Debtor, Secured Party will have a valid, perfected security interest in such Collateral upon Debtor acquiring use or possession of same; (g) Debtor shall from time to time execute and deliver to Secured Party such documents as Secured Party may reasonably require to further assure to Secured Party its rights under this Agreement, including as may be necessary or appropriate to perfect, preserve and protect the security interests granted hereunder.

To the extent permitted by applicable law, Debtor hereby authorizes Secured Party to execute and file in the name of Debtor, with or without Debtor's signature, UCC financing statements, continuation statements or other filings not inconsistent with the financing statements executed by Debtor hereunder, which Secured Party in its reasonable discretion may deem necessary or appropriate to perfect, preserve and protect the security interests granted hereunder. So long as Debtor remains obligated under this Agreement or under any Secured Obligations,

Debtor shall permit Secured Party, or its assignee, at Secured Party's expense, to inspect all documents concerning Debtor's claim, legal or otherwise, and to visit any place, including, but not limited to law offices, where the documents concerning the Third Party Claim or Collateral are located, to examine Debtor's books of account and records and legal documents and to discuss Debtor's affairs, finances and accounts and legal status of the Third Party Claim with, and be advised of the same by Debtor's respective officers, agents and attorneys, all at such reasonable times as may be requested by Secured Party. Debtor shall not change its attorneys, with respect to the Third Party Claim, or the location of its legal documents, or change its name or identity in any manner, unless Debtor shall have given at least thirty (30) days prior written notice thereof to Secured Party and shall have taken all action necessary or required by Secured Party to protect and preserve the perfection and validity of the security interest granted hereunder. Debtor agrees and covenants to keep substantially complete and accurate books and records concerning the Collateral, including proceeds thereof, and to permit the Secured Party and their designees upon reasonable notice and during reasonable business hours to enter Debtor's premises, or the premises of Debtor's attorneys, to inspect Debtor's books, records and legal documents and to audit and make copies or extracts from such books, records and documents. Such entry and inspection shall be conducted so as to minimize any interruption to Debtor and Debtor's attorneys' law practice and, upon the request of Debtor, shall be subject to an appropriate non-disclosure agreement. Debtor agrees and covenants to promptly notify the Secured Party of any legal process levied against the Collateral.

5.     Default. There shall be a "default" hereunder upon the occurrence of any of the following "Events of Default":

(a)     Debtor shall fail to make any payment of principal, interest or charges when due pursuant to the Promissory Note or this Agreement and such failure shall not be cured within ten (10) days after receipt of notice from Secured Party; or

(b)     Debtor shall fail to perform, observe or comply with any other covenant, condition or agreement required to be observed or performed by the Debtor pursuant to the Promissory Note or this Agreement and such failure shall not be cured within thirty (30) days after receipt of written notice from Secured Party, or in the event such failure is not reasonably curable within such thirty (30) day period, Debtor shall not be in default so long as it commences curative efforts within such thirty day period and thereafter diligently continues to try to cure such failure; or

(c)     Debtor shall become insolvent or shall admit in writing its inability to meet its debts as they become due, or shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of creditors, or consent to the appointment of a receiver or trustee for all or a substantial part of its properties, or file a petition, answer or other instrument seeking or

acquiescing to the arrangement of Debtor's debts, or other relief under the federal bankruptcy laws or any other applicable law for the relief of debtors of the United States of America or any state or territory thereof; or

(d)      A decree or order of a court having jurisdiction in the premises shall be entered (i) adjudging Debtor to be bankrupt or insolvent, or (ii) appointing a receiver or trustee or assignee in bankruptcy or insolvency of Debtor or Debtor's assets or, (iii) directing the winding up or liquidation of Debtor's affairs; or

(e)      Any representation, warranty or covenant made by Debtor in connection with the Promissory Note or this Agreement shall be untrue at any time in any material respect.

(f)      The institution of involuntary bankruptcy, insolvency or similar proceedings against the Debtor which are not dismissed within sixty (60) days; or

6.      <u>Secured Party's Remedies Upon Default</u>.  Upon the occurrence of a default hereunder, all obligations secured hereby shall, at Secured Party's option, immediately become due and payable without notice or demand, and Secured Party shall have in any jurisdiction where enforcement hereof is sought, in addition to all other rights and remedies which the Secured Party may have under law or under the terms of the Promissory Note, (i) all rights and remedies of a secured party under the Uniform Commercial Code as enacted in the territory of Guam, and/or (ii) the following rights and remedies, all of which may be exercised with or without further notice to Debtor: (a) to settle, compromise or release on terms acceptable to Secured Party, in whole or in part, any amounts owing on the Collateral; (b) to enforce payment and prosecute any action or proceeding with respect to any and all of the Collateral; (c) to extend the time of payment, make allowances and adjustments and issue credits in Secured Party's name or in the name of Debtor; (d) to foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Collateral by any available judicial procedure or without judicial process; (e) to enter any premises where any Collateral may be located for the purpose of taking possession of or removing the same; (f) to remove from any premises where the same may be located the Collateral and any and all documents, instruments, files and records, and any receptacles and cabinets containing the same, relating to the Collateral; (g) to receive, open and dispose of all mail addressed to Debtor and notify postal authorities to change the address for delivery thereof to such address as Secured Party may designate. Debtor agrees to pay all costs and expenses incurred by Secured party in the enforcement of this Agreement, including without limitation reasonable attorneys' fees, whether or not suit is filed thereon. Secured Party may exercise any of its rights and remedies without demand, advertisement or notice other than as may be required by law or this Agreement. To the fullest extent permitted by law, Debtor waives notice of acceptance of this Agreement, demand, notice, protest, or other action taken in reliance hereon and all other demands

and notices of any description, except as provided herein.

7. Notices. Any notice required or permitted by law or this Agreement shall be in writing, and shall be deemed to have been duly given if personally delivered, upon delivery, or if sent by telex, electronic reproduction, facsimile or similar means, upon sending, or, if mailed, forty-eight (48) hours after being posted by United States certified or registered mail, first-class postage prepaid, to the parties or their assignees at the addresses set forth above (or at such other address as shall be given in writing by either party to the other).

8. Miscellaneous. This Agreement expresses the entire understanding of the parties and may not be altered or amended except with the written consent of each of the parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. All obligations of Debtor shall be joint and several. All of Secured Party's rights and remedies hereunder are cumulative and not exclusive, and are in addition to all rights and remedies provided by law or under any other agreement between Debtor and Secured Party, or otherwise. Where the context permits, the plural term shall include the singular, and vice versa. This Security Agreement shall be governed by the laws of the Territory of Guam. The paragraph headings are inserted for convenience only.

9. No Obligations Undertaken. Nothing contained in this Agreement shall relieve Debtor of, or impose on Secured Party, any obligation or liability for, under or in respect of the Collateral, and Debtor shall indemnify and hold Secured Party harmless from and against all such obligations and liabilities and any claims relating thereto.

10. Further Assurances. Debtor agrees that at any time and from time to time upon the written request of Secured Party, Debtor will execute and deliver such further documents, including but not limited to financing statements or other filings appropriate for perfecting Secured Party's rights hereunder, in form reasonably satisfactory to counsel for Secured Party and Debtor, and will take or cause to be taken such further acts as Secured Party may reasonably request in order to effect the purposes of this Agreement and perfect or continue the perfection of the security interest in the Collateral granted to Secured Party hereunder.

11. Waiver, Amendment or Modification. No waiver, amendment or modification of any provision hereof or of any right or remedy hereunder shall be effective unless in writing and signed by the party against whom such waiver, amendment or modification is sought to be enforced. No failure by Secured Party to exercise, and no delay by Secured Party in exercising, any right, power or remedy granted hereunder shall operate as a waiver of any such right, power or remedy. A waiver of any right or remedy by Secured Party on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

12.   Severability.   Every provision of this Agreement is intended to be severable.   If any term or provision is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions, which terms and provisions shall remain binding and enforceable.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**DEBTOR:**

**ROBERT J. DEL ROSARIO**

**SECURED PARTY:**

**HAYAO SUEHIRO**

GUAM                    )
                       ) ss:
CITY OF HAGÂTÑA         )

On this 18th day of February, 2003, before me a Notary Public in and for Guam, personally appeared ROBERT J. DEL ROSARIO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public

NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004
P.O. Box 20248, GMF, Guam 96921

) SEAL (

GUAM                    )
                       ) ss:
CITY OF HAGÂTÑA         )

On this ____ day of February, 2003, before me a Notary Public in and for Guam, personally appeared HAYAO SUEHIRO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public

NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004
P.O. Box 20248, GMF, Guam 96921

) SEAL (

Confirmation Report – Memory Send

Time : Feb-19-03 16:35
Tel line : +6714725487
Name : McKeown Vernier Price Maher

| | | |
|---|---|---|
| Job number | : | 811 |
| Date | : | Feb-19 16:32 |
| To | : | 4775206 |
| Document pages | : | 10 |
| Start time | : | Feb-19 16:32 |
| End time | : | Feb-19 16:35 |
| Pages sent | : | 10 |
| Status | : | OK |

Job number : 811 *** SEND SUCCESSFUL ***

MVPM

McKEOWN • VERNIER • PRICE • MAHER
ATTORNEYS AT LAW
A JOINT VENTURE OF McKEOWN PRICE, LLP
AND VERNIER & MAHER, LLP
115 Hesler Place • Ground Floor, Governor Joseph Flores Bldg. • Hagåtña, Guam 96910
Telephone No.: (671) 477 7059 • Facsimile No.: (671) 472 5487

FRANCIS M. McKEOWN
JOHN G. PRICE
COLIN C. MUNRO
THOMAS S. CLIFTON
JEANINE M. LARREA

D. PAUL VERNIER, JR.
JOHN B. MAHER
LOUIS J. YANZA
MICHAEL D. FLYNN, JR.
TERENCE E. TIMBLIN

FACSIMILE TRANSMITTAL COVER SHEET

TO: Mr. R. Todd Thompson – MAIR MAIR SPADE & THOMPSON
FACSIMILE NUMBER: 477 5206

TO: Mr. William L. Gavras – GORMAN & GAVRAS
FACSIMILE NUMBER: 472 2342

FROM: Michael D. Flynn, Jr. DATE: February 19, 2003

RE: Robert J. Del Rosario

MVPM FILE NO.: 8-0028 NO. OF PAGES INCLUDING COVER SHEET: 10

IMPORTANT NOTE: This fax is CONFIDENTIAL and may be covered by legal professional privilege. It must not be read, copied, disclosed or use by any person other than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS:

Attached please find a letter from Michael D. Flynn, Jr. dated February 19, 2003 w/enclosure.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Norma.

# UNIFORM COMMERCIAL CODE ∘ FINANCING STATEMENT
## IMPORTANT—Read Instructions on back before filling out form
### This FINANCING STATEMENT is presented for filing pursuant to the Guam Uniform Commercial Code.

| DEBTOR (LAST NAME FIRST—IF AN INDIVIDUAL) DEL ROSARIO, ROBERT | | 1A. SOC. SEC. OR FEDERAL TAX NO. 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 | |
|---|---|---|---|
| 1. MAILING ADDRESS O CALAMENDO LOOP, LIGUAN TERRACE | 1C. CITY, STATE/TERRITORY DEDEDO, GUAM | 1D. ZIP CODE 96929 | |
| ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST—IF AN INDIVIDUAL) | | 2A. SOC. SEC. OR FEDERAL TAX NO. | |
| MAILING ADDRESS | 2C. CITY, STATE/TERRITORY | 2D. ZIP CODE | |
| DEBTOR'S TRADE NAMES OR STYLES (IF ANY) | | 3A. FEDERAL TAX NUMBER | |
| SECURED PARTY HAYAO SUEHIRO MAILING ADDRESS Sankyo Seisakusho Co., Ltd., Ikebe Cho 3290 CITY Yokohama-shi STATE/TERRITORY Yokohama, Japan ZIP CODE 224-0053 | | 4A. BANK TRANSIT AND ABA NO. | |
| ASSIGNEE OF SECURED PARTY (IF ANY) NAME MAILING ADDRESS CITY STATE/TERRITORY ZIP CODE | | 5A. SOC. SEC. NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO. | |

This FINANCING STATEMENT covers the following types or items of property (include description of real property on which located and owner of record when required by instruction 4).

The proceeds of settlement, compromise or judgment from Debtor's claims and damages for bodily injury against Japan Airlines Co., Ltd., Japan Airlines Co. (Guam), Ltd., their respective insurance companies, their agents, and any other person who contributed to the cause of Debtor's bodily injury to his lower limbs on a Japan Airlines Co., Ltd. aircraft. See, Security Agreement, attached hereto as Exhibit "A".

| CHECK IF APPLICABLE [X] | 7A. [ ] | PRODUCTS OF COLLATERAL ARE ALSO COVERED | 7B. DEBTOR(S) SIGNATURE NOT REQUIRED IN ACCORDANCE WITH INSTRUCTION 5(a) ITEM: [ ] (1) [ ] (2) [ ] (3) [ ] (4) |
|---|---|---|---|
| CHECK IF APPLICABLE [X] | | [ ] DEBTOR IS A "TRANSMITTING UTILITY" IN ACCORDANCE WITH UCC SEC. 9105 (1) (n) | |

See, Debtor's signature on Security Agreement, Ex. "A".

SIGNATURE(S) OF DEBTOR(S)

Robert J. Del Rosario

TYPE OR PRINT NAME(S) OF DEBTOR(S)

SIGNATURE(S) OF SECURED PARTY(IES) Michael D. Flynn, Jr., Attorney for
Hayao Suehiro

Hayao Suehiro

TYPE OR PRINT NAME(S) OF SECURED PARTY(IES)

Return copy to:

**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004

| C O D E | (DATE, TIME, FILE NO. AND FILING OFFICER) FILED AGANA, GUAM Commissioner Banking & Insurance FILE NO. 27104 TIME 3:10 pm DATE APR 13 2007 |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 0 | |

DATE:

Exhibit
**4**

# SECURITY AGREEMENT

This Security Agreement is made this 18th of February, 2003, by and between ROBERT J. DEL ROSARIO, whose mailing address is 110 Calamendo Loop, Liguan Terrace, Dededo, Guam 96929 (hereinafter referred to as the "Debtor"); and Hayao Suehiro, whose address is Sankyo Seisakusho Co., Ltd., Tsuzuki-ku, Ikebe-cho 3290, Yokohama City, Japan 224-0053 (hereinafter as to the "Secured Party").

WHEREAS, Secured Party has advanced Debtor the total sum principal amount of One Hundred Thousand Dollars ($100,000.00) and Debtor has agreed to repay Secured Party the principal amount of One Hundred Thousand Dollars, plus interest, in accordance with the terms of a certain Promissory Note, of even date, executed concurrently herewith (hereinafter, the "Promissory Note");

WHEREAS, Debtor recently suffered injuries to his lower limbs on a Japan Airlines Co., Ltd. aircraft, as a result of the actions of various third party tortfeasors (hereinafter, the "Third Party Claim");

WHEREAS, Debtor possesses an interest in the proceeds of settlement, compromise or judgment from the Third Party Claim against Japan Airlines Co., Ltd., Japan Airlines Co. (Guam), Ltd., their respective insurance companies, their agents, and any other person who contributed to the cause of the incident (hereinafter, the "Third Party Tortfeasors");

WHEREAS, Debtor intends and agrees to pursue his Third Party Claim against the Third Party Tortfeasors by filing a claim for the injuries he has suffered and, should the claim not be settled or compromised, by prosecuting his claim in a civil action against the Third Party Tortfeasors within two (2) years of the date upon which Debtor was injured;

WHEREAS, Debtor intends and agrees to be solely responsible for the payment of all attorney's fees, which he has, or will, incur in the pursuit, and prosecution, of his Third Party Claim; and,

WHEREAS, Debtor intends and agrees to assign to Secured Party the proceeds of any settlement, compromise or judgment that he receives from the Third Party Claim in an amount equal to the amount Debtor owes Secured Party under the Promissory Note.

In consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. **Incorporation of Premises.** All Premises set forth above are hereby fully incorporated into this Agreement and shall have the same force and effect as if set forth in full herein.

ORIGINAL



2.    Grant of Security Interest.  For valuable consideration, and to secure the payment and performance of the Secured Obligations as defined in Paragraph 3, Debtor hereby assigns to Secured Party, and grants to Secured Party, a security interest in the proceeds of any settlement, compromise or judgment from the Third Party Claim, resulting from actions of the Third Party Tortfeasors, as referenced in the Premises above (all of which shall be collectively referred to herein as "Collateral").

3.    Obligations Secured.  This Agreement and the security interest created hereby are given for the purpose of securing the following (collectively, the "Secured Obligations"): All obligations now existing or hereafter arising, direct or indirect, absolute or contingent, due or to become due, of Debtor to Secured Party arising out of or relating to the payment of the indebtedness evidenced by that certain Promissory Note of even date herewith in the principal amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) (the "Promissory Note") executed by Debtor in favor of Secured Party.

4.    Debtor's Representations.  Debtor represents, covenants, warrants and agrees that: (a) Debtor will execute all documents and take such other action as Secured Party deems necessary to create and perfect a security interest in the Collateral; (b) Debtor will, at its sole cost and expense, defend any claims that may be made against the Collateral; (c) Debtor will not, without Secured Party's prior written consent, transfer, sell, encumber, conceal or otherwise dispose of the Collateral or any interest therein; (d) Debtor has full power and authority to own the Collateral and enter into and perform this Agreement; (e) the execution and delivery of this Agreement by Debtor have been duly authorized by all necessary actions of the Debtor; (i) Debtor has, or will have, good and marketable title to all of the Collateral, free and clear of all liens, claims, options, charges, security interests and encumbrances taking priority over the security interest granted hereunder to the Secured Party; (f) As to any of the Collateral hereafter acquired by Debtor, Secured Party will have a valid, perfected security interest in such Collateral upon Debtor acquiring use or possession of same; (g) Debtor shall from time to time execute and deliver to Secured Party such documents as Secured Party may reasonably require to further assure to Secured Party its rights under this Agreement, including as may be necessary or appropriate to perfect, preserve and protect the security interests granted hereunder.

To the extent permitted by applicable law, Debtor hereby authorizes Secured Party to execute and file in the name of Debtor, with or without Debtor's signature, UCC financing statements, continuation statements or other filings not inconsistent with the financing statements executed by Debtor hereunder, which Secured Party in its reasonable discretion may deem necessary or appropriate to perfect, preserve and protect the security interests granted hereunder. So long as Debtor remains obligated under this Agreement or under any Secured Obligations,

Debtor shall permit Secured Party, or its assignee, at Secured Party's expense, to inspect all documents concerning Debtor's claim, legal or otherwise, and to visit any place, including, but not limited to law offices, where the documents concerning the Third Party Claim or Collateral are located, to examine Debtor's books of account and records and legal documents and to discuss Debtor's affairs, finances and accounts and legal status of the Third Party Claim with, and be advised of the same by Debtor's respective officers, agents and attorneys, all at such reasonable times as may be requested by Secured Party. Debtor shall not change its attorneys, with respect to the Third Party Claim, or the location of its legal documents, or change its name or identity in any manner, unless Debtor shall have given at least thirty (30) days prior written notice thereof to Secured Party and shall have taken all action necessary or required by Secured Party to protect and preserve the perfection and validity of the security interest granted hereunder. Debtor agrees and covenants to keep substantially complete and accurate books and records concerning the Collateral, including proceeds thereof, and to permit the Secured Party and their designees upon reasonable notice and during reasonable business hours to enter Debtor's premises, or the premises of Debtor's attorneys, to inspect Debtor's books, records and legal documents and to audit and make copies or extracts from such books, records and documents. Such entry and inspection shall be conducted so as to minimize any interruption to Debtor and Debtor's attorneys' law practice and, upon the request of Debtor, shall be subject to an appropriate non-disclosure agreement. Debtor agrees and covenants to promptly notify the Secured Party of any legal process levied against the Collateral.

5. **Default.** There shall be a "default" hereunder upon the occurrence of any of the following "Events of Default":

(a) Debtor shall fail to make any payment of principal, interest or charges when due pursuant to the Promissory Note or this Agreement and such failure shall not be cured within ten (10) days after receipt of notice from Secured Party; or

(b) Debtor shall fail to perform, observe or comply with any other covenant, condition or agreement required to be observed or performed by the Debtor pursuant to the Promissory Note or this Agreement and such failure shall not be cured within thirty (30) days after receipt of written notice from Secured Party, or in the event such failure is not reasonably curable within such thirty (30) day period, Debtor shall not be in default so long as it commences curative efforts within such thirty day period and thereafter diligently continues to try to cure such failure; or

(c) Debtor shall become insolvent or shall admit in writing its inability to meet its debts as they become due, or shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of creditors, or consent to the appointment of a receiver or trustee for all or a substantial part of its properties, or file a petition, answer or other instrument seeking or

acquiescing to the arrangement of Debtor's debts, or other relief under the federal bankruptcy laws or any other applicable law for the relief of debtors of the United States of America or any state or territory thereof; or

(d)     A decree or order of a court having jurisdiction in the premises shall be entered (i) adjudging Debtor to be bankrupt or insolvent, or (ii) appointing a receiver or trustee or assignee in bankruptcy or insolvency of Debtor or Debtor's assets or, (iii) directing the winding up or liquidation of Debtor's affairs; or

(e) Any representation, warranty or covenant made by Debtor in connection with the Promissory Note or this Agreement shall be untrue at any time in any material respect.

(f) The institution of involuntary bankruptcy, insolvency or similar proceedings against the Debtor which are not dismissed within sixty (60) days; or

6.     Secured Party's Remedies Upon Default.     Upon the occurrence of a default hereunder, all obligations secured hereby shall, at Secured Party's option, immediately become due and payable without notice or demand, and Secured Party shall have in any jurisdiction where enforcement hereof is sought, in addition to all other rights and remedies which the Secured Party may have under law or under the terms of the Promissory Note, (i) all rights and remedies of a secured party under the Uniform Commercial Code as enacted in the territory of Guam, and/or (ii) the following rights and remedies, all of which may be exercised with or without further notice to Debtor: (a) to settle, compromise or release on terms acceptable to Secured Party, in whole or in part, any amounts owing on the Collateral; (b) to enforce payment and prosecute any action or proceeding with respect to any and all of the Collateral; (c) to extend the time of payment, make allowances and adjustments and issue credits in Secured Party's name or in the name of Debtor; (d) to foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Collateral by any available judicial procedure or without judicial process; (e) to enter any premises where any Collateral may be located for the purpose of taking possession of or removing the same; (f) to remove from any premises where the same may be located the Collateral and any and all documents, instruments, files and records, and any receptacles and cabinets containing the same, relating to the Collateral; (g) to receive, open and dispose of all mail addressed to Debtor and notify postal authorities to change the address for delivery thereof to such address as Secured Party may designate. Debtor agrees to pay all costs and expenses incurred by Secured party in the enforcement of this Agreement, including without limitation reasonable attorneys' fees, whether or not suit is filed thereon. Secured Party may exercise any of its rights and remedies without demand, advertisement or notice other than as may be required by law or this Agreement. To the fullest extent permitted by law, Debtor waives notice of acceptance of this Agreement, demand, notice, protest, or other action taken in reliance hereon and all other demands

and notices of any description, except as provided herein.

7. **Notices.** Any notice required or permitted by law or this Agreement shall be in writing, and shall be deemed to have been duly given if personally delivered, upon delivery, or if sent by telex, electronic reproduction, facsimile or similar means, upon sending, or, if mailed, forty-eight (48) hours after being posted by United States certified or registered mail, first-class postage prepaid, to the parties or their assignees at the addresses set forth above (or at such other address as shall be given in writing by either party to the other).

8. **Miscellaneous.** This Agreement expresses the entire understanding of the parties and may not be altered or amended except with the written consent of each of the parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. All obligations of Debtor shall be joint and several. All of Secured Party's rights and remedies hereunder are cumulative and not exclusive, and are in addition to all rights and remedies provided by law or under any other agreement between Debtor and Secured Party, or otherwise. Where the context permits, the plural term shall include the singular, and vice versa. This Security Agreement shall be governed by the laws of the Territory of Guam. The paragraph headings are inserted for convenience only.

9. **No Obligations Undertaken.** Nothing contained in this Agreement shall relieve Debtor of, or impose on Secured Party, any obligation or liability for, under or in respect of the Collateral, and Debtor shall indemnify and hold Secured Party harmless from and against all such obligations and liabilities and any claims relating thereto.

10. **Further Assurances.** Debtor agrees that at any time and from time to time upon the written request of Secured Party, Debtor will execute and deliver such further documents, including but not limited to financing statements or other filings appropriate for perfecting Secured Party's rights hereunder, in form reasonably satisfactory to counsel for Secured Party and Debtor, and will take or cause to be taken such further acts as Secured Party may reasonably request in order to effect the purposes of this Agreement and perfect or continue the perfection of the security interest in the Collateral granted to Secured Party hereunder.

11. **Waiver, Amendment or Modification.** No waiver, amendment or modification of any provision hereof or of any right or remedy hereunder shall be effective unless in writing and signed by the party against whom such waiver, amendment or modification is sought to be enforced. No failure by Secured Party to exercise, and no delay by Secured Party in exercising, any right, power or remedy granted hereunder shall operate as a waiver of any such right, power or remedy. A waiver of any right or remedy by Secured Party on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

12. <u>Severability</u>. Every provision of this Agreement is intended to be severable. If any term or provision is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions, which terms and provisions shall remain binding and enforceable.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**DEBTOR:**

_____

**ROBERT J. DEL ROSARIO**

**SECURED PARTY:**

_____
SUEHIRO HAYAO

**HAYAO SUEHIRO**

GUAM                 )

                                 ) ss:

CITY OF HAGÅTÑA     )

On this 18 day of February, 2003, before me a Notary Public in and for Guam, personally appeared ROBERT J. DEL ROSARIO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public

NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004,
P.O. Box 20248, GMF, Guam 96921

) SEAL (

GUAM                 )

                                 ) ss:

CITY OF HAGÅTÑA     )

On this 18th day of February, 2003, before me a Notary Public in and for Guam, personally appeared HAYAO SUEHIRO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public

NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004
P.O. Box 20248, GMF, Guam 96921

) SEAL (





J.K. Merrill & Son, Inc. v. Carter
Idaho,1985.

Supreme Court of Idaho.
J.K. MERRILL & SON, INC., an Idaho corporation,
Plaintiff-Counterdefendant-Appellant,
v.
R.G. CARTER, aka Ronald G. Carter, and La Rae
Carter, husband and wife, Defendants,
andC & J Corporation, an Idaho corporation; Rjay
Lloyd, Defendant-Counterclaimant,
andRjay Lloyd, Chartered, now known as Lloyd &
Joyce, Chartered, an Idaho professional corporation,
Defendants-Counterclaimants-Respondents.
No. 15436.

June 17, 1985.

Creditor brought action against debtor, against
corporation which assigned creditor its interest in
limited partnership as security for loan to debtor, and
the against other creditor with lien on that interest.
The District Court, Ada County, George D. Carey, J.,
denied relief, and creditor appealed. The Supreme
Court, Bistline, J., held that photocopy of security
agreement, including photocopied signature, attached
to financing statement was sufficient to perfect
creditor's security interest in corporation's assignment
of its interest in limited partnership.

Reversed.
West Headnotes

Secured Transactions 349A  92.1

349A Secured Transactions
    349AII Perfection of Security Interest
        349Ak92 Financing Statement
            349Ak92.1 k. In General. Most Cited Cases
            (Formerly 349Ak92)
Photocopy of security agreement, including
photocopied signature of debtor, stapled to unsigned
financing statement, was sufficient to perfect
creditor's security interest in collateral pursuant to
I.C. § 28-9-402(1), particularly where party

challenging sufficiency of photocopy was a lien
creditor, not a reliance creditor, and was thus not
misled by documents.

*750 W. Anthony Park and Michael F. Burkett, Jr.,
Boise, for plaintiff-counterdefendant-appellant.
Bradley B. Poole, Boise, for defendants-
counterclaimants-respondents.
BISTLINE, Justice.
The case before us hinges on a proper interpretation
and application of I.C. § 28-9-402(1). The issue to
be decided is whether a photographic copy of the
debtor's signature on a security agreement which is
stapled to a financing statement not signed by the
debtor is sufficient to perfect a security interest in
collateral.

The facts, not in dispute, are found well-portrayed in
Judge Carey's decision. On November 30, 1979
plaintiff J.K. Merrill & Son, Inc., loaned $20,000 to
Ron Carter. Mr. Carter executed and delivered his
promissory note for that amount to Merrill. Interest
on the note accrued at 20 percent per annum. On
December 14, 1979 Merrill loaned an additional
$45,000 to Mr. Carter. Mr. Carter executed and
delivered his promissory note for that amount to
Merrill. Interest on the second note also accrued at
20 percent per annum. To secure payment of both
notes, C & J Corp. (whose sole shareholder and
president at that time was Mr. Carter) executed and
delivered to Merrill on December 18, 1979 an
assignment of all its interest in a limited partnership
known as "Creekside Development." The C & J
Corp. name did not appear on the notes.

The purpose of the loans to Mr. Carter was to provide
money for payment of obligations which C & J Corp.
owed under certain provisions of the Creekside
Development Partnership agreement. The evidence
does not show whether the funds were used for that
purpose.

On June 16, 1980 Mr. Carter paid Merrill $25,000, on
July 3, 1980 he paid an additional $5,000. No
further payments were made. Merrill sued Mr. and
Mrs. Carter on the notes and received a default

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

judgment in the instant civil action [FN1] on August 31, 1982 in the total amount of $101,210.42, which included unpaid principal, interest, costs, and attorney fees. No action to execute on this judgment has been taken.

> FN1. Merrill's complaint, filed on March 16, 1982, in addition to pursuing its claim on the Carter notes and assignment, also brought in as party-defendants the C & J Corp. and Rjay Lloyd, Chartered, now known as Lloyd & Joyce, Chartered. These defendants were brought in for reasons which will hereinafter appear.

Rjay Lloyd, Chartered, a Boise law firm (now known and hereinafter referred to as Lloyd & Joyce), was at all relevant times the trustee for the George T. Davis, P.A., Employee Profit Sharing Plan and also the trustee for the Twin Falls Tractor and Implement Employee Profit Sharing plan. On or about April 24 or 25, 1980, the Davis Plan, through Mr. Lloyd as trustee, loaned $42,000 to Mr. Carter in return for Mr. Carter's executed and delivered promissory note for that amount. Interest on the note accrued at 29 1/2 percent per annum. To secure payment of the note, Mr. Carter executed and delivered to the Davis Plan on April 25, 1980 an assignment of all his stock in C & J Corp. and all of his interest **751 **789 in the Creekside Development Limited Partnership Agreement. This assignment made no mention of the prior assignment to J.K. Merrill.

On May 23, 1980 the Twin Falls Plan, through Mr. Lloyd as trustee, loaned $50,000 to Mr. Carter in return for Mr. Carter's executed and delivered promissory note for that amount to the Twin Falls Plan. Interest on this note accrued at 30 percent per annum. No security was given for this note. No payments were made by Mr. Carter on the Davis note or on the Twin Falls note. The C & J Corp. name did not appear on either of those notes.

On May 7, 1981 Lloyd & Joyce paid $50,000 into the Twin Falls Plan. The Twin Falls Plan, through Mr. Lloyd as trustee, in return assigned all of its interest in the Twin Falls note to Lloyd & Joyce. On May 8, 1981 Lloyd & Joyce paid $42,000 to the Davis Plan. In return, the Davis Plan, through Mr. Lloyd as trustee, assigned to Lloyd & Joyce all of its interest in the Davis note and all of its interest in the assignment executed and delivered by Mr. Carter to secure that note. Lloyd & Joyce then filed a lawsuit against Mr. and Mrs. Carter, Case No. 76577. The Lloyd &

Joyce complaint apparently alleged that the obligation of the note was Carter's individually,[FN2] and hence Carter was individually liable. Lloyd & Joyce obtained a default judgment in the amount of $122,055.60, including the principal on the notes and attorney's fees in the amount of $30,000, but were not awarded any interest, which presumably was not pleaded and prayed for.

> FN2. Only the judgment is in the record, not the complaint. In answering Merrill's complaint in this action, which in Ada County District Court was No. 78026, as a second affirmative defense, Lloyd & Joyce observed that Ron Carter's execution of the notes to Merrill was an individual, not a C & J Corp., obligation.

The Lloyd & Joyce judgment in Case No. 76577 was recorded with the Ada County Recorder on January 8, 1982. On January 19, a writ of execution was issued and notices of garnishment dated January 28, 1982 were served on the general partners in Creekside Development. Each partner answered that it did not have any property of the Carters nor did it owe anything to the Carters. Each partner indicated, however, that C & J Corp. was a former limited partner in Creekside Development to which Creekside Development might owe an obligation in an unliquidated amount.

A writ of execution was also served on Mr. Carter with instructions to the sheriff to levy upon Mr. Carter's ownership interest in C & J Corp. On April 16, 1982 Mr. Carter executed a lost stock certificate affidavit with respect to his C & J Corp. stock and instructed C & J Corp. to reissue his stock in the name of Lloyd & Joyce, Chartered. As mentioned earlier, Mr. Carter formerly was the sole shareholder of C & J Corp., but, in 1980, Carter assigned all of his C & J Corp. stock to the Davis Plan, which in turn assigned it to Lloyd & Joyce in 1981.

While Lloyd & Joyce was attempting to collect on its judgment of January 8, 1982 through the issuance of the writ of execution on January 19, 1982, Merrill on January 19 filed with the Secretary of State a financing statement covering the limited partnership interest in Creekside Development assigned to it by C & J Corp. two years earlier. It was signed by Merrill as creditor, but it was not signed by the debtor, Ron Carter, or by C & J Corp.[FN3] Attached to the financing statement was a photocopy of C & J Corp.'s assignment to Merrill dated December 18, 1979.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

This copy had not been re-executed as a duplicate original, but was a photocopy displaying Mr. Carter's signature in his corporate capacity. An identical filing was made with the Ada County recorder on March 1, 1981.

> FN3. As owner of the collateral, C & J Corp. would also be a "debtor" as defined by I.C. § 28-9-105(d), but it would not become an obligor on the note itself.

Unable to realize any satisfaction of its judgment against the Carters in Case No. 76577, Lloyd & Joyce then sued C & J *752 **790 Corp. for payment of the assigned Davis and Twin Falls Tractor notes-Civil Case No. 78297. The record does not contain the complaint and we are unable to divine the legal theory upon which Lloyd & Joyce sued C & J Corp. as a debtor liable for the Carter notes. Obviously, however done, it was an action which would go by default. At this time, Lloyd & Joyce owned all of the stock in C & J Corp., pursuant to Mr. Carter's lost stock certificate affidavit of April 16, 1982. On May 26, 1982 Lloyd & Joyce obtained a default judgment in Case No. 78297 against C & J Corp. for $93,241, including costs and attorney's fees of $1,200. The default judgment also provided Lloyd & Joyce with a charging order against C & J Corp.'s partnership interest in Creekside Development. Presumably, the complaint, a copy of which is not in the record, alleged a legal theory under which it could pray for a charging order. This resulted in Lloyd & Joyce obtaining a default judgment against the C & J Corp. of which it was the only shareholder. A writ of execution was issued in Case No. 78297 on January 31, 1983. A notice of garnishment thereafter was served on the general partners in Creekside Development. Each partner answered that it did not have any property of C & J Corp., but that C & J Corp. was a former limited partner in Creekside Development to which Creekside Development might owe an obligation in unliquidated amount, "payable at some future date."

At trial, the parties disagreed over the effect of the photocopy of the security agreement stapled to the financing statement not signed by the debtor. The trial court concluded that "the photocopy of the debtor's corporate signature on the photocopy of the security agreement does not satisfy the signature requirement of I.C. Section 28-9-402; the copy itself must be actually signed to be effective." R., p. 103. The district court cited as authority for this proposition *Sommers v. International Business*

*Machines,* 640 F.2d 686 (5th Cir.1981). The trial court also determined that the signature deficiency was not a minor error. *Sommers, supra; see also* I.C. § 28-9-402(8). Thus, the court concluded that the assignment from C & J Corp. to Merrill was an unperfected security interest in C & J Corp.'s interest in Creekside Development. The trial court ultimately held that as a lien creditor, under I.C. § 28-9-301(3) [FN4], Lloyd & Joyce had priority over the appellant's unperfected security interest in C & J Corp.'s interest in Creekside Development.

> FN4. I.C. § 28-9-301(3) reads as follows: (3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

We are not persuaded to the same reading of I.C. § 28-9-402 which the district court applied, but hold that J.K. Merrill's security interest in Creekside Development was properly perfected prior to Lloyd & Joyce's acquisition of a judgment against C & J Corp.'s interest in Creekside Development. Our reasoning is as follows.

In order to perfect a security interest a creditor must file a financing statement in the appropriate office, either with the Secretary of State or with the county where the collateral is located, or both. I.C. § 28-9-401. The financing statement must contain certain information to be sufficient to perfect a security interest. The formal requisites are set forth in I.C. § 28-9-402(1):

**Formal requisites of financing statement-Amendments-Mortgage as financing statement.-** (1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

*753 **791 One exception to the above-stated requirement is listed in I.C. § 28-9-402(1). This exception allows for the filing of a security agreement in lieu of a financing statement if certain conditions are met:A copy of the security agreement is sufficient as a financing statement if it contains the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

above information and is signed by the debtor. A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state.

The question before us today centers on our interpretation of the "signed by the debtor" language in the above-quoted language of I.C. § 28-9-402(1). Does the "signed by the debtor" language mean that a photocopy of the original security agreement which was signed by the debtor can be filed, or does it mean that a photocopy of the security agreement must be freshly resigned by the debtor before the filing is sufficient to perfect a security interest? We conclude that the "signed by the debtor" language of I.C. § 28-9-402 means only that the security agreement had been signed by the debtor and a photocopy of that document is sufficient to perfect a security interest. The "signed by the debtor" language does not require that the signed photocopy of the security agreement be impressed with an original signature when filed in order to perfect a security interest.

We are guided in our decision by I.C. § 28-1-201(39) wherein "signed" is defined to include "any symbol executed or adopted by a party with present intention to authenticate a writing." The Official Comment further explains:
39. "Signed." New. The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

We examined the meaning of "signed" in _Paloukos v. Intermountain Chev. Co._, 99 Idaho 740, 588 P.2d 939 (1978), and concluded that a printed business name which was the heading of the form satisfied the signature requirement. The focus of our analysis in _Paloukos_ was whether the symbol was executed with the intention to authenticate a document. _Id._ at 744-45, 588 P.2d 939. We are persuaded that the signing of the security agreement by the debtor indicates a present intention to authenticate the document. The fact that the document is later photocopied does not

detract from the "present intention to authenticate" at the time of the signing.

We are cognizant that there is a split of authority pertaining to the function of the signature requirement under the UCC § 9-402.[FN5] Courts and commentators have construed the signature requirement for a financing statement as serving dual functions: notice and authentication. _In re Plummer_, 6 UCC Rep.Serv. 555 (DCED Mich.1969); _In re Pischke_, 32 UCC Rep.Serv. 349, 11 B.R. 913 (Bank.E.D.Va.1981); Henson, _Secured Transactions Under the Uniform Commercial Code_, § 4-9 (2d ed. 1979); White and Summers, _Uniform Commercial Code_, § 23-16 (2d ed. 1980); Anderson, _Uniform Commercial Code_, § 9-402:18 (2d ed. 1971). Much of the authority used in the analysis of the signature function consists of attorney general opinions from various states. _See_ footnotes to _Anderson, supra_, at § 9-402:18. Moreover, *754 **792 there is no consensus among the opinions in their understanding of the function of the signature requirement, whether it be notice or authentication. Likewise, there is no consensus as to whether a photographic copy of a signed original is to be deemed "signed" for the purpose of filing under Article 9. Ops.Atty.Gen. (Ill.1963), 1 UCC Rep.Serv. 672; Ops. Atty.Gen. (Ala.), 4 UCC Rep.Serv. 130; Ops.Atty.Gen. (Ky.) No. 63-623, July 16, 1963. _Contra,_ Ops.Atty.Gen. (Mo.) 3 UCC Rep.Serv. 552; Ops.Atty.Gen. (Alaska) June 14, 1979.

> FN5. For ease of reference the UCC sections referred to will be abbreviated to their article and section number. The reader is referred to Idaho Code Title 28 for the version of the Uniform Commercial Code adopted by Idaho.

For the purposes of our analysis today, we assume that the signature requirement of 9-402 serves the twin functions of notice and authentication. Moreover, we consider these two functions to be equally important, although they have two quite different purposes. Our understanding of the differing purposes is set forth below, and guides our decision in the instant case.

Notice is one of the fundamental purposes of the Article 9 filing system. The filed documents are designed to give potential creditors warning that a prospective debtor has used certain collateral as security in another transaction, hence the specific collateral is not available as free and clear collateral

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for another transaction. The notice purpose of a financing statement was clearly stated in Henson, *supra,* at 64: "The purpose of a financing statement is simply to give notice to the world that designated parties have entered into a secured transaction covering the described collateral. The details must be learned from the parties." *See also* White and Summers, *supra,* at 937. The filing serves only to put the world on further inquiry.

While an inked original signature provides notice of the security interest, a photographic copy of the signature provides just as much notice. The type of notice contemplated by the Uniform Commercial Code was inquiry notice-details regarding the secured transaction must be discovered from the parties. We fail to perceive how a photographic copy of a signature provides any less notice than an inked signature; hence we must conclude that a "copied" signature provides adequate notice to potential creditors.

The authentication purpose of the signature of the debtor is derived from § 1-201(39) wherein "signed" is defined to include "any symbol executed or adopted by a party with the present intention to authenticate a writing."[FN6] Section 9-402 requires the filing statement be signed by the debtor, thus courts interpret § § 1-201(39) and 9-402 to mean that a financing statement without the debtor's signature is not authenticated, hence the unsigned financing statement does not perfect a security interest. *In re Plummer, supra; In re Pischke, supra.* We agree that an unsigned financing statement with nothing more does not perfect a security interest. The question remains, however, whether a signed security agreement attached to the unsigned financing statement can validate the filing and perfect the security interest. We are convinced that a signed security agreement appended to an unsigned financing statement can be used to meet the signed-by-the-debtor requirement of § 9-402(1). Practical considerations and fair commercial practices dictate our result.

> FN6. It is noteworthy that the Code has never required a statement be manually subscribed. *Henson, supra,* at 77.

When a debtor signs a security agreement he intends the collateral covered by the agreement to secure the transaction. A creditor uses the filing system to protect his interest in the collateral. It inures to the benefit of the creditor, not the debtor, to file the financing statement. The debtor's signature on the filing statement is an acknowledgment, or authentication, of the financing statement-it is a public statement that the debtor's property, the collateral, is encumbered. Lack of the debtor's signature suggests there is some question whether or not the described collateral is covered by a security agreement. Thus, a financing statement, unsigned by the debtor, with nothing more, is insufficient to \*755 \*\*793 perfect a security interest in collateral because there is no acknowledgment, or authentication, by the debtor that the collateral truly is subject to a security interest. However, when the security agreement, signed by the debtor, is appended to the financing statement, it is clear that the debtor has acknowledged the existence of the security agreement covering the collateral. Any result which suggests that a signed security agreement appended to an unsigned financing statement does not authenticate the existence of a security interest is simply inconsistent with logic and reason. We conclude that a security agreement signed by the debtor and appended to an unsigned financing statement meets both the notice and authentication concerns inherent in the "signed by the debtor requirement" for financing statement in § 9-402(1).

We must now decide if a photographic copy of the security agreement, including a photocopy of the signature of the debtor, is sufficient to validate a financing statement. Unpersuaded by the Fifth Circuit's conclusion to the contrary, *Sommers, supra,* we hold that the photocopy of the signature on the security agreement appended to a financing statement is adequate to perfect a security interest.

We perceive there are only two reasons to hold that a photocopied signature is inadequate: one is concern that the signature has been forged or that the security agreement itself has been altered in the photocopying process. We do not take this concern lightly, but conclude that the proper resolution of a problem of this nature is through traditional methods of challenging fraud or forgery, not by declaring imperfect an otherwise valid security interest. The second risk of photocopied signatures or documents is that overreaching creditors will unjustifiably tie up a debtor's collateral by filing financing statements, unsigned by the debtor, with photocopied security agreements which are incorrect or have been fabricated. We are not persuaded that this is a serious problem. White and Summers addressed this issue when they said:

Presumably one policy which calls for a debtor's signature is the fear that some nasty creditor will cast

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a shadow over all of the debtor's property by filing a financing statement. Whether such creditors run loose in any numbers in the commercial jungle we do not know. Certainly creditor overreaching is possible. White & Summers, *supra,* § 23-16, p. 954 (footnote omitted).

We think the judicial system is well-prepared to deal with any overreaching or fraudulent transactions of this nature. Any creditor searching the records who doubts the validity of the security agreement can contact the parties and examine the original security agreement to see if it is identical to the one on file. Moreover, any party so desiring can satisfy himself that the security agreement was actually signed by the debtor.[FN7]

> FN7. Not before us today is the case where neither the financing statement nor the appended security agreement was signed by the debtor. However, under § 9-402 lack of signatures on both documents clearly results in an unperfected security interest.

Modern business practices dictate the use of photocopied documents. The use of photocopy machines is so commonplace that we cannot ignore the realities of contemporary commercial transactions. In fact, most persons in their daily lives use copies of documents as often, if not more so, than the original itself. For certain, in the commercial and business world use of photocopies is widespread. Substantiating reason for recognizing the use of photocopied documents is found in the purposes provisions of the Uniform Commercial Code itself. Section 1-102 reads in part:
**Purposes-Rules of construction-Variation by agreement.**-(1) This act shall be liberally construed and applied to promote its underlying purposes and policies.
(2) Underlying purposes and policies of this act are **\*756 \*\*794** (a) to simplify, clarify and modernize the law governing commercial transactions;
(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
(c) to make uniform the law among the various jurisdictions.

Moreover, the Comment to the Official Text provides further support for our decision today.**Purposes of Changes:**
1. Subsections (1) and (2) are intended to make it clear that:

This Act is drawn to provide flexibility so that, since it is intended to be a semi-permanent piece of legislation, it will provide its own machinery for expansion of commercial practices. It is intended to make it possible for the law embodied in this Act to be developed by the courts in the light of unforeseen and new circumstances and practices. However, the proper construction of the Act requires that its interpretation and application be limited to its reason.

Clearly, we are required under I.C. § 28-1-102 to recognize the use of photocopied documents as part of modern commercial transactions.

Other authorities recognize that a photocopy of an original should be considered a "signed" copy in most circumstances. *See* 69 Am.Jur.2d *Secured Transactions* § 387 (1973). A footnote to this section suggests that the draftsmen intended to recognize duplicate reproduction:
99. The Uniform Commercial Code draftsmen are apparently of the opinion that a carbon impression, photocopy, or other duplicate or reproduction of a financing statement, bearing or showing the signatures of the parties thereto, would be sufficient under Uniform Commercial Code § 1-201(39). See Report No. 2 of the Permanent Editorial Board for the Uniform Commercial Code 254.
*Id.*

We are persuaded that the photocopy of the security agreement signed by the debtor stapled to the financing statement is sufficient to perfect the security interest.

Our decision today is buttressed by a 1980 Idaho Bankruptcy Court ruling construing I.C. § 28-9-402(1). *In re Door Supply Center, Inc.,* 3 B.R. 103 (Bank.D.Idaho 1980). In *Door Supply* the financing statement contained four names typed into the debtor's box, including the bankrupt's, but was signed by two persons as individuals with no indication they were signing as officers of the corporate bankrupt. In reviewing this circumstances, the bankruptcy court held that the defect in the debtor's signature was not fatal to perfect the security interest. The court stated:
Technically, the bankrupt's signature on the financing statement should have been signed by an officer of the bankrupt in his representative capacity, but case law holds that if a diligent creditor who checked the Financing Statement would have been put on notice of the existence of a claimed lien by the corporate creditor, a defect in the debtor's signature is not fatal. *Plemens v. Didde-Galser, Inc.,* 244 Md. 556, 224

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A.2d 464 (1966).
*Id.* at 106.

One further factor which has persuaded us today to recognize the photographic copy of the security agreement as meeting the "signed" requirement is that in the case before us the respondent, is a lien creditor, not a reliance creditor. Respondent was in no way misled by the documents on file with the Secretary of State's office regarding the existence or nature of appellant's security interest. Under this circumstance it would be unfair to defeat a prior-in-time security interest because of an overly restrictive reading of the statute. We do not believe the Code was intended for use in such a manner. Furthermore, I.C. § 28-9-402(8) provides: "(8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Nothing in *757 **795 the filing in the case before us was in any way misleading to the respondent.

The photocopy of the security agreement, including a photocopied signature, was sufficient to perfect appellant's security interest. The decision of the district court ruling that appellant's security interest was not properly perfected is *reversed.* The cause is remanded to the district court for entry of judgment in favor of appellant.

Costs to appellant. No attorney's fees awarded on appeal.

DONALDSON, C.J., and McFADDEN, WALTERS and SWANSTROM, JJ. (Pro Tem), concur.
Idaho,1985.
J.K. Merrill & Son, Inc. v. Carter
108 Idaho 749, 702 P.2d 787, 41 UCC Rep.Serv. 1112

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TERRITORY OF GUAM
## UNIFORM COMMERCIAL CODE—REQUEST FOR INFORMATION OR COPIES—FORM UCC-3
### IMPORTANT—Read Instructions on back before completing form

REQUEST FOR INFORMATION OR COPIES. Present in Duplicate to Filing Officer

**1.** [✓] INFORMATION REQUEST. Filing officer please furnish certificate showing whether there is on file any presently effective financing statement naming the Debtor listed below and any statement of assignment thereof, and if there is, giving the date and hour of filing of each such statement and the names and addresses of each secured party named therein.

**1A.** DEBTOR (LAST NAME FIRST)
DEL ROSARIO, Robert J.

**1B.** SOC. SEC. OR FED. TAX NO.
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

**1C.** MAILING ADDRESS
110 Calamendo Loop, Liguan Terrace

**1D.** CITY, STATE
Dededo, Guam

**1E.** ZIP CODE
96929

**1F.** Date _July 24_ _2007_    Signature of Requesting Party _Michael D. Flynn, Jr. Attorney_

**2. CERTIFICATE:**

| FILE NUMBER | DATE AND HOUR OF FILING | NAME(S) AND ADDRESS(ES) OF SECURED PARTY(IES) AND ASSIGNEE(S), IF ANY |
|---|---|---|
| 27104 | APR 13, 2007   3:10 PM | HAYAO SUEHIRO – YOKOHAMA, JAPAN |
|  |  |  |
|  |  |  |
|  |  |  |

The undersigned filing officer hereby certifies that the above listing is a record of all presently effective financing statements and statements of assignment which name the above debtor and which are on file in my office as of _7/24/2007 XXXX_ at _4:55 P_ M.

_July 25, 2007_ XXXXX
(DATE)

_Artemio B. Ulloapan_
(FILING OFFICER)

By _ams_

**3.** [ ] COPY REQUEST. Filing officer please furnish _____ copy(ies) of each page of the following statements concerning the debtors listed below  [ ] Financing Statement  [ ] Amendments  [ ] Statements of Assignment  [ ] Continuation Statements  [ ] Statement of Release  [ ] Termination Statement  [ ] All Statements on file.

| FILE NUMBER | DATE OF FILING | NAME(S) AND MAILING ADDRESS(ES) OF DEBTOR(S) | DEBTORS SOC. SEC. OR FED. TAX NO. |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Date _____ 19____    Signature of Requesting Party _____

**4. CERTIFICATE:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all statements requested above.

_____ 19____
(DATE)

_____
(FILING OFFICER)

By _____

**5.**
### Mail Information or Copies to

NAME / MAILING ADDRESS / CITY AND STATE

Michael D. Flynn, Jr., Esq.
MAHER YANZA FLYNN TIMBLIN, LLP
115 Hesler Pl., Ground Floor
Gov. Flores Building
Hagatna, Guam  96910-5004

**Exhibit**

Uniform Commercial Code Form UCC-3
H-617 11-76   Guam

1  Michael D. Flynn, Jr., Esq.
   **MAHER · YANZA · FLYNN · TIMBLIN, LLP**
2  115 Hesler Place, Ground Floor
   **Governor Joseph Flores Building**
3  Hagåtña, Guam 96910
   Telephone No.: (671) 477-7059
4  Facsimile No.: (671) 472-5487

5  **Attorneys for HAYAO SUEHIRO**

6

7  ## IN THE UNITED STATES DISTRICT COURT

8  ## DISTRICT OF GUAM

9

10  HAYAO SUEHIRO,                    )  **CIVIL CASE NO. CIV07-00017**
                                      )
11             Plaintiff,            )
                                      )
12       vs.                          )
                                      )  **JUDGMENT BY DEFAULT**
13  ROBERT J. DEL ROSARIO, MELANIE    )
    DEL ROSARIO,                      )
14                                    )
               Defendants.            )
15  _____ )

16

17      The Defendants having failed to plead or otherwise defend, default having

18  been entered and the claim being for a sum certain or for a sum which can by

19  computation be made certain, judgment is hereby entered, pursuant to Federal

20  Rules of Civil Procedure Rule 55(b)(2), against the Defendants, jointly and severally,

21  as follows:

22      1. Damages in the sum of $100,000.00;

23      2. Prejudgment interest of 1% per month, compounded monthly, from

24         February 18, 2003 to May 15, 2007 (i.e., an amount totaling $64,354.63),

25         and 2% per month, compounded monthly, from May 16, 2007 to the date

           of Judgment (i.e., an amount totaling $15,208.53 to August 30, 2007);

1

Exhibit

1

3. Attorney's fees of $16,640.00;

2

4. Costs of $1,007.60 in connection with the collection of the indebtedness

3

on the Promissory Note;

4

5. Plaintiff is granted a security interest in any settlement funds deposited by

5

Japan Airlines Co., Ltd. with the Clerk of Court in District Court of Guam,

6

Civil Case No. CIV04-00028 subject to determination of an award of

7

settling attorney's fees in such case;

8

6. The Clerk of Court is ordered to first and immediately pay the Plaintiff and

9

attempt to fully satisfy the Defendant's indebtedness to Plaintiff by

10

disbursing to Plaintiff any and all settlement funds deposited with the Clerk

11

of Court under District Court of Guam, Civil Case No. CIV04-00028,

12

immediately upon receiving said settlement funds after the issue

13

concerning settling attorney's fees is settled and paid if appropriate;

14

7. Plaintiff is granted judgment against the Defendants, jointly and severally,

15

for any deficiency in the settlement funds deposited with the Clerk of

16

Court, under District Court of Guam, Civil Case No. CIV04-00028, should

17

said settlement funds be insufficient to satisfy Robert J. Del Rosario's

18

debt, plus interest, costs and reasonable attorney's fees; and

19

8. Costs of suit.

20

So Ordered.

21

22



/s/ **Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Sep 06, 2007**

23

24

25

2